UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 19-CR-60276-AHS

UNITED STATES OF AMERICA,
    Plaintiff.

-vs-

**CHRISTOPHER MIANO,**
    Defendant.
_____/

### DEFENDANT'S MOTION FOR DOWNWARD VARIANCE AND SENTENCING MEMORANDUM AND RESPONSE TO GOVERNMENT'S MOTION FOR DOWNWARD DEPARTURE

The Defendant, Christopher Miano, by and through undersigned counsel, pursuant to Rule 32 of the Federal Rules of Criminal Procedure, 18 U.S.C. Section 3553(a) and the Due Process Clause of the Fifth Amendment to the United States Constitution, respectfully files this, his Motion for Downward Variance and Sentencing Memorandum, as well as his response to the Government's Motion for Downward Departure based on U.S.S.G. § 5K1.1. The Defendant moves this Court for the imposition of a non-incarcerative sentence, which the unique facts pertinent to this Defendant render a reasonable sentence that is not greater than necessary to meet all of the sentencing concerns expressed by Congress in 18 U.S.C. §3553(a), and appropriately accounts for the extraordinary nature of his years-long cooperation with the Government in the investigation and prosecution of several health care fraud Defendants.

1

For the last five years, Chris Miano has likely been one of the most prolific cooperators that this Court has encountered. Miano's cooperation began well before he signed a plea agreement (it was even contemplated before the Government executed a search warrant at his office) and includes all three types of cooperation: historical (proffers and the production and organization of thousands of documents), proactive (making recorded calls and secretly videoed in-person meetings with targets), and testimonial (hearing and trial testimony, and their associated preparation sessions, in and out of the Southern District of Florida). Miano has met with federal prosecutors, either in-person or via videoconference, approximately **49** times and provided information concerning **30+** targets of healthcare fraud investigations. Miano has conducted consensually recorded calls or text messages with targets of healthcare fraud investigations approximately **136** times. On **three** separate occasions, Miano met in-person with targets of fraud investigations while wearing an audio and video recording device. Miano has provided **tens of thousands** of pages of documents/emails, including spending countless hours organizing and summarizing his communications with "targets" for the Government. Miano has participated in over **100** phone calls or in-person meetings with federal agents over the last five years to assist in investigations. Miano has waived any potential attorney-client privilege, cooperated with Department of Justice filter teams and has been called as a witness by the Government in order to establish an exception (i.e.,

crime fraud) to the attorney client privilege asserted by a co-conspirator. Miano also voluntarily entered into an agreement to sell his family home and forfeit his share of the proceeds, as well as place funds into counsel' Florida Bar Trust Account as early as 2019 to pay toward his forfeiture balance. Finally, Miano has testified in one trial, which resulted in a conviction, and has been listed as a witness in numerous other cases and is credited for providing evidence/potential testimony that led to guilty pleas.

All the while, Miano completely pivoted from the offense conduct and started a new business from the ground-up, employing many people, roasting, packaging and selling multiple coffee products out of his company's warehouse, factory and fulfillment center, in Fort Lauderdale. In the calendar year 2023 this business had over $2,500,000 in revenue, paid Mr. Austin's widow over $125,000, income to Mr. Miano of more than $150,000 and hourly wages for employees more than $110,000. The impact this case has had on Mr. Miano, and his response, should satisfy this Court that he has been rehabilitated and poses absolutely no risk of recidivism.

## INTRODUCTION

Given the mitigating factors set forth herein, Mr. Miano respectfully requests that this Court impose a non-incarcerative sentence. Such a sentence would be sufficient—but not greater than necessary—to satisfy the factors outlined in 18 U.S.C. § 3553(a). See *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). Mr.

Miano's very early acceptance of responsibility and cooperation with the Government, his attempts to make the Government financially whole, including listing his family home for sale in order to pay his forfeiture judgment in full, the stress and impact that the last five years have had on Mr. Miano and his family and the negative impact this case will have on Miano for the remainder of his life, all provide ample justification for the Court to impose the below-guideline sentence which Counsel ardently requests..

The era of mechanized application of the sentencing guidelines to formulate an appropriate sentence is over. The United States Supreme Court's decision in *Pepper v. United States*, 562 U.S. 476 (2011) makes this abundantly clear. The sentencing guideline range is not presumptively reasonable, is advisory only, and is but one, and certainly not the most important factor, that the court must consider in fashioning a reasonable sentence. *Rita v. United States*, 127 S. Ct. 2456 (2007); *Gall v. United States*, 128 s. Ct. 586 (2007). In *United States v. Hunt*, 459 F. 3d 1180 (11thCir. 2006), the court held that there are "many instances" where the guideline range will not yield a reasonable sentence. *Id*. at 1184. The court held that district courts are obligated to impose a reasonable sentence regardless of the guideline range, so long as the guideline has been considered. *Id*. In the United States Supreme Court's most recent decision minimizing the impact of the guidelines on determining a reasonable sentence, the court stated:

> "It has been uniformed and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Koon v. United States, 518 U.S. 81 (1996). Underlying this tradition is the principle that "the punishment should fit the offender and not merely the crime." *Williams*, 337 U.S. at 247, 69 S. Ct 1079.

*Pepper supra*. 1239-40 [Emphasis added]. The court went to say:

> In particular, we have emphasized that '[h]ighly relevant if not essential-to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." Id. at 247, 69 S. Ct. 10-79. Permitting sentencing courts to consider the widest possible punishment will suit not merely the offense but the individual defendant." *Wasman v. United States*, 468 U.S. 559 (1984).

*Id.* at 1240. While courts should give "respectful consideration" to the advisory guidelines and their accompanying policy statements, the Court in *Pepper* stressed, and post-*Booker* decisions make clear, that a district court may in appropriate cases impose a non-guideline sentence based on a disagreement with the Sentencing Commission's views. *Pepper, supra*. at 1247. Except for unconstitutional considerations (e.g., race, sex, etc.) there is no limit to the type and nature of information a court may consider in imposing a reasonable sentence. U.S.S.G. § 1B1.4; see also 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

5

## THE DEFENDANT'S HISTORY AND CHARACTERISTICS WARRANT A SIGNIFICANT VARIANCE

The Defendant's personal history and characteristics are laid out in detail in the Presentence Investigation Report, and even more compellingly so in the seven character reference letters that accompany this memorandum. Here are a few quotes from these letters:

Mr. Miano's wife, Dana, states: "He is genuinely remorseful and has actively sought to rectify them over the past five years. Despite the challenges, he has consistently cooperated with authorities, demonstrating a commitment to accountability and rectitude."

From Nicole Austin, the widow of former Co-Defendant Dean Austin: "I had just been through my second onset of Cancer when I was recovering during the last part of the Covid lockdown in 2020 and up until Dean's unexpected death just a few months later when I walked into the warehouse to meet with Chris. Greif stricken and overwhelmed, he welcomed me into the business no questions."

From Mr. Miano's younger sister, Jennifer Hannon: "While I am unfamiliar with the specific details of his case, please know that I believe you are dealing with one of the good ones here…He has a positive impact on his family's lives, including that of his 10-year-old son. Chris also owns and operates a coffee wholesaling business, the income from which supports his family."

From his step-daughter Domenica Conte: "Christopher Miano has been a pivotal figure in my life for the past two decades, assuming the role of my stepfather. He has been the sole paternal influence in my upbringing, significantly contributing to the person I am today. Everything he does is dedicated to the wellbeing of our family."

From Jenna Norton, the 25-year-old-stepdaughter of Mr. Miano: "Christopher Miano has been a significant figure in my life for the past two decades. While my biological father was absent and lacked compassion, my stepfather filled that void with unwavering support and care."

From Mr. Miano's mom, Nancy Wilson: "Chris lives with his wife, Dana, son Anthony, stepdaughter Dominica, and her eighteen-month-old baby. Chris takes care of all the bills, the outside grounds and inside cleaning of the house."

From Kenneth Wilson, Mr. Miano's stepfather: "I can say these charges have taken a heavy toll on Chris and his family. He has done everything that has been asked of him after pleading guilty. Everyone at the company truly appreciates working for Chris as he is a great boss."

Miano attaches, as exhibits, family and business photos and will share a video of the DCAM coffee operation with this Court at the sentencing hearing.

6

**Mr. Miano's Low Risk of Recidivism**

In 2004, the Federal Sentencing Commission published a report which presented a statistical analysis of the characteristics associated with the likelihood of a person recidivating. The study showed that, amongst others, (1) older individuals were less likely to reoffend; (2) those who were employed were less likely to recidivate than those who were unemployed; (3) non-drug users were less likely to recidivate than drug users; (4) college graduates were significantly less likely to reoffend than those with lower levels of educational attainment; and (5) people who received non-incarcerative sentences were less likely to reoffend than those who received sentences involving incarceration. See "Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines," United States Sentencing Commission (May 2004) at 28-32.[1] These factors strongly support a finding that Mr. Miano poses no risk of reoffending (while by Attorney William Tunkey's standards Miano may not be considered "older," he certainly has exhibited the maturity and insight into the impact his actions have had on his wife and young children to motivate him never to reoffend).

The Eleventh Circuit discussed the interplay between a defendant's risk of recidivism and sentencing outcomes in *United States v. Clay*, 483 F.3d 739 (11th

---

[1] Available at: www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf

Cir. 2007). In *Clay*, the District Court sentenced the defendant to 60 months, even though his guidelines were 188-235 months, because of the District Court's view that the defendant was not likely to re-offend. Id. at 742–43. In affirming the defendant's sentence, the Eleventh Circuit stressed that a sentencing court is "require[d] . . . to consider characteristics of the defendant and the offense that make it more or less likely that the defendant will reoffend." Id. at 745. Because the defendant in that case had "fundamentally changed since his offense" and "pose[d] a lesser risk to the community," the Eleventh Circuit determined that the sentencing court was correct in granting a downward variance. Id. at 746. See also *Gall v. United States*, 552 U.S. 38, 57–59 (2007); *United States v. Cherry*, 487 F.3d 366, 369–70 (6th Cir. 2007) (granting significant downward variance from the guideline range where the defendant presented a low risk to reoffend); *Prosperi*, 686 F.3d at 48 (affirming non-incarcerative sentence where there was no risk of recidivism). There should be no doubt that Miano has fundamentally changed since his offense.

As further proof of the near nonexistent risk of Mr. Miano reoffending, he has been under the supervision of the Government since the summer of 2019 (when his cooperation began). He has religiously observed the conditions of his release pending disposition of this matter and reported to his pretrial services officer without fail. See *United States v. Munoz-Nava* 524 F.3d 1137 (10th Cir. 2008) (holding district court's sentence of one year and one day in prison plus one year of home

9

detention reasonable in drug case where guidelines were 47–56 months, partly because the defendant's "behavior while on a year-and-a-half pretrial release, which the district court found to be exemplary," showed the defendant was unlikely to reoffend).

Another factor which should assure this Court that Miano will not reoffend is that he has spent the last four years building a new business, DCAM Coffee, d/b/a/ Barista Joe's (https://dcamcoffee.com/). Miano started this business with his partner and co-defendant, Dean Austin, almost immediately after their cooperation began. This Court will hear how this business, and its staff, is completely dependent on Mr. Miano in order to operate.

**The Defendant provided immediate and substantial cooperation**

One of the goals of sentencing is rehabilitation. See *Williams v. New York*, 337 U.S. 241, 248 (1949). A defendant's admission of responsibility or expression of contrition "is often a significant first step towards his rehabilitation and, for that reason, deserving of a possible reward in the form of a lessened sentence." *Smith v. Wainwright*, 664 F.2d 1194, 1196 (11th Cir. 1981).

While the Court will certainly address the Defendant's cooperation based on the Government's § 5K1.1 Motion for Downward Variance, this Court may also consider the Defendant's extensive cooperation under a § 3553(a) analysis as

evidence of the personal characteristics of the Defendant; his extraordinary acceptance of responsibility; that he has been rehabilitated, and, that he's unlikely to reoffend. See, *See Roberts v. United States*, 445 U.S. 552, 558 (1980) (defendant's cooperation demonstrates that the "defendant will transgress no more [and will] respond to rehabilitative efforts [and] not deem himself at war with his society."); *U.S. v. Knox* 573 F.3d 441 (7th Cir. 2009) ("we agree with Davis that, as a general matter, a district court may consider a defendant's cooperation with the government as a basis for a reduced sentence, even if the government has not made a § 5K1.1 motion."); *U.S. v. Zolp,* 479 F.3d 715 (9th Cir. 2007) (the Court may consider good faith efforts at cooperation under U.S.C. § 3553(a)); *United States v. Fernandez,* 443 F.3d 19, 33 (2d Cir. 2006) (district court should consider "the contention that a defendant made efforts to cooperate, even if those efforts did not yield a Government motion for a downward departure pursuant to U.S.S.G. § 5K1.1"); *United States v. Doe*, 398 F.3d 1254, 1260-61 (10th Cir. 2005) (concluding that "a defendant's assistance should be fully considered by a district court at sentencing even if that assistance is not presented to the court in the form of a § 5K1.1 motion").

Mr. Miano's cooperation has been extensive, exceptional, and extraordinary. At no point has the government ever expressed any doubt of the veracity of the information Miano provided. The twelve unopposed requests to

postpone his sentencing date attest to this. On top of participating in 49 meetings with federal prosecutors, Miano was a go-to resource for federal agents, helping them to understand how the genetic testing fraud scheme operated, as his cooperation began before one of the first major law enforcement actions concerning genetic testing fraud. He provided an extensive, organized email database and documents which tracked the fraudulent financial fall-out from the purchase of signed doctor's orders for genetic tests. A selective summary of what Miano's cooperation helped the Government accomplish will be provided prior to the July 23rd sentencing hearing.

**Deterrence Does Not Require Lengthy Incarceration**

An argument underlying most of the Government's recommendations for incarceration for Defendants such as Miano is the need for general deterrence. Yet, the theory of "general deterrence" as a justification for imprisonment is premised on the idea that prospective offenders will rationally consider potential consequences before committing a crime. However:

> [T]he high variability across types of offenders and offences, and lack of satisfactory evidence demonstrating offender rationality in practice, makes it impossible to assume all or most offenders rationally consider commission of a crime before committing it. The strongest argument against deterrence theory is the overwhelming body of evidence suggesting that humans do not make conscious, rational decisions at all times. An overview of

>the myriad of theories and research surrounding irrational criminal decision-making shows that punishment as a general deterrent is ineffective.

See, Athula Pathinayake, *Should We Deter Against General Deterrence*?, Wake Forest J.L. & Pol'y 63, 88–89 (2018).

Rather, the Court should consider that Mr. Miano does not need to be incarcerated to be deterred from committing any future crime. A term of incarceration "may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall* 552 U.S. at 54. The United States Sentencing Commission has recognized that alternatives to incarceration "divert offenders from the criminogenic effects of imprisonment which include contact with more serious offenders, disruption of legal employment, and weakening of family ties." See "Sentencing Options Under the Guidelines," United States Sentencing Commission (1996).[2]

Mr. Miano respectfully asks this Court to consider that a below-guidelines sentence would afford him the best opportunity to make amends for his actions. See *United States v. Adelson*, 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006), aff'd 301 Fed. Appx 93 (2d Cir. 2008) ("there is considerable evidence that even relatively short

---

[2] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/working-group-reports/simplification/SENTOPT.pdf

sentences can have a strong deterrent effect on prospective 'white collar' offenders.").

**A Downward Variance Will Not Create an Unwarranted Sentencing Disparity**

Under 18 U.S.C. §3553(a)(6), courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Data collected from fraud cases across the country and within the Southern District of Florida demonstrates a downward variance in this case would not lead to unwarranted sentence disparities.

In 2023, the United States Sentencing Commission compiled sentencing data for 64,124 cases from every federal jurisdiction. See "Quarterly Data Report, Fiscal Year 2023" United States Sentencing Commission (March 25, 2024).[3] In 27,483 (42.85%) of those cases, defendants received a downward departure or variance from the advisory guidelines range. *Id.* Of the 757 defendants convicted of fraud related offenses that received downward departures based on §5K1.1 motions, the average decrease was 68.9% below the bottom of the advisory guideline range. *Id.* at 24. For the 2,081 fraud defendants who received a downward variance, the average variance was 58.7%. Of the 5,205 defendants sentenced for fraud related

---

[3] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC-2023_Quarterly_Report_Final.pdf

offenses, 25.1% received probation sentences. *Id.* at 10.

An examination of departures/variances granted for defendants convicted of fraud-related offenses in the Southern District of Florida further evidences a downward variance from the advisory guideline range would not only be reasonable, it would be in line with general sentencing practices in this District. The Sentencing Commission's "Interactive Data Analyzer" revealed that in 2023, there were 238 reported cases involving fraud in this District where defendants had a criminal history category of I. In only 36.6% (87) cases was the Defendant sentenced *within* the advisory guideline range, while in 39.1% (93) of the cases, the Defendant received a downward variance from the Court (unrelated to a motion by the Government). The average sentence in this District for Defendants sentenced under §2B4.1 was 19 months.

In addition to the sentencing statistics, this Court will also hear how a non-incarcerative sentence will not create an unwarranted disparity between Miano and defendants in related cases. Notably, paragraph 26 of the PSR identifies Harry Molz and Dean Baker (19-cr-60275-Moreno) as related defendants. Similar to Miano, they pled to one count of conspiracy to solicit and receive health care kickbacks. On June 29, 2020, Molz was sentenced to 14 months (sentencing guidelines were 37-46), which was reduced a year later pursuant to the Government's motion, to 8 months. On June 26, 2020, Baker was sentenced to 30 months (sentencing guidelines were

46-57), which was reduced a year later pursuant to the Government's motion, to time served (the Defendant was in custody for approximately 22 months serving a concurrent sentence due to a supervised release violation in a previous case). Miano's cooperation far exceeds that of Baker and Molz, in time, quantity and quality. This Court will also hear about the resolution of other, related cases, outside of this district that will assure this Court that there is no concern for sentencing disparity.

## CONCLUSION

Christopher Miano has shown this Court, over the last 5+ years, that he is a changed man. He has done everything in his power to right the wrongs of his actions, and his cooperation with the Government far exceeds "substantial." He has built a business that depends on him, and he is surrounded by a family that supports him. The 18 U.S.C. §3553(a) factors, as well as the Government's U.S.S.G. § 5K1.1 motion, warrant a sentence of time served followed by a term of three years supervised release or, alternatively, a six month term of home confinement followed by a three year term of probation.

Respectfully Submitted,

**JOSEPH E. NASCIMENTO, ESQ.**
ROSS AMSEL RABEN
NASCIMENTO, PLLC
2250 S.W. Third Avenue, 400

Miami, Florida  33129-2095
JoeNascimento@crimlawfirm.com
(305) 858-9550

BY: /s *Joseph Nascimento*
      JOSEPH E. NASCIMENTO
      FBN# 70096

**WILLIAM R. TUNKEY, ESQ.**
WILLIAM TUNKEY, P.A.
2250 S.W. Third Avenue, 400
Miami, Florida  33129-2095
Bill@TunkeyLaw.com
(305) 858-9550

BY: /s *William R. Tunkey*
      WILLIAM R. TUNKEY
      FBN# 125153